**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL A. N.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 23-22755 (ZNQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon Plaintiff Michael N.'s ("Plaintiff") appeal of the Social Security Administration's denial of his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, *et seq.* (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

  After reviewing the parties' submissions and the Administrative Record ("AR"), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence. Accordingly, the decision will be **AFFIRMED**.

**I.  BACKGROUND**

  The issues before the Court are: (1) whether the ALJ failed to properly categorize Plaintiff's medically determinable impairments ("MDIs") as severe or non-severe; (2) whether the ALJ properly examined Plaintiff's MDIs at Step 3 against the Commissioner's Listings separately

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

and in combination, and (3) whether the decisional Residual Functional Capacity ("RFC") was based on substantial evidence and reflective of the ALJ's findings.

A.   **Procedural Posture**

Plaintiff is a veteran who has been awarded a 100% disability rating by the Veteran's Association related to a combination of conditions including traumatic brain injury ("TBI"), migraines, and posttraumatic stress disorder ("PTSD") related to his service. (Pl. Br. at 12, 18; AR 35, 79.) This is Plaintiff's second application for social security disability insurance benefits and a period of disability in front of the same ALJ. (Compare AR 34 with *id.* 85.) On December 10, 2021, Plaintiff filed a protective application for a period of disability and for disability insurance benefits, alleging a disability onset date of January 12, 2021. (AR 24.)[2] The Social Security Administration ("SSA") denied the request both initially and on reconsideration. (*Id.*) Thereafter, Plaintiff requested a hearing, which was held in Richmond, Virginia on May 24, 2023. (*Id.*) Plaintiff was represented by counsel, and an impartial vocational expert also appeared at the hearing. (*Id.*) On July 11, 2023, the presiding ALJ issued a decision finding that Plaintiff is not disabled under sections 223(d) and 216(i) of the Social Security Act, and Plaintiff appealed. (*Id.* 1, 37.) The SSA's Appeals Council denied Plaintiff's request for review, finding no grounds for review of the ALJ's decision. (*Id.* 1.) Accordingly, Plaintiff initiated the instant appeal before this Court. (ECF No. 1.)

On April 25, 2024, Plaintiff filed his Opening Brief ("Pl. Br.," ECF No. 9). The Commissioner filed a brief in opposition ("Def. Br..," ECF No. 11).

---

[2] The full Administrative Record in this case can be found from ECF No. 4-4–14. All citations from these documents will be directly to the AR number rather than document specific page numbers. The alleged onset date for the application on appeal was later modified to January 21, 2021.

2

**B.     The ALJ's Decision**

On July 11, 2023, the ALJ determined that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 24–37.) The ALJ set forth the five-step process for determining whether an individual is disabled. (*Id.* 25–27 (citing 20 C.F.R. § 404.1520 *et seq.*)) Plaintiff had a prior disability claim for a different time period adjudicated by the same presiding ALJ. (*Id.* 27; "Prior Decision," AR 67-89.)[3] The ALJ in the instant matter set forth the standard in the Fourth Circuit for a subsequent adjudication after an ALJ has adjudicated a previously filed disability claim covering a different time period. (*Id.* 27.)[4] In the Fourth Circuit,

> "where a final decision by an Administrative Law Judge . . . contains a finding required at a step in the sequential evaluation process for determining disability, the agency must consider such finding as evidence and consider its persuasiveness in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an un-adjudicated period."

(*Id.*) In determining the persuasiveness of a prior finding, the subsequent ALJ should consider factors such as:

> "(1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period under consideration in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim."

(*Id.* (citing Social Security Acquiescence Ruling ["SSAR"] 00-1(4)).)

At step one, the ALJ found that Plaintiff has not "engaged in substantial gainful activity" since the disability onset date, January 21, 2021. (*Id.* 27 (citing 20 C.F.R. § 404.1571 *et seq.*)) At

---

[3] The prior application alleged a period of disability and disability insurance benefits with an onset date of October 1, 2019. (AR 67.) The prior decision was issued January 14, 2021. (AR 85.)
[4] Plaintiff and the ALJ appear to be located in the Fourth Circuit.

3

step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the spine; status-post cervical fusion; migraines; neurocognitive disorder; status-post traumatic brain injury ("TBI"); posttraumatic stress disorder ("PTSD"); and depression. (*Id.* (citing 20 C.F.R. § 404.1520(c)).) These are the same severe impairments found in the prior adjudication. (*Id.*) The ALJ found Plaintiff had the following non-severe impairments and prior symptoms the medical record showed he had been treated for: sleep apnea; irritable bowel syndrome; hypertension; hyperlipidemia; left shoulder osteoarthritis and tendinopathy; gastroesophageal reflux disease (GERD); reactive airway disease; obesity; and right ankle degenerative joint disease. (*Id.* 28.)

At step three, the ALJ determined that Plaintiff does not have "an impairment or combination of impairments" that qualifies under the SSA's listed impairments. (*Id.* 29 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ considered Plaintiff's physical and mental impairments singly and in combination against the Commissioner's Listings. (*Id.*) The ALJ also considered medical opinions and the prior determination that Plaintiff did not meet the listing criteria. (*Id.* 31.)

At step four, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to:

> "perform light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday; occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds; frequently balance, stoop, and kneel; occasionally crouch and crawl; can tolerate occasional exposure to weather; can tolerate no exposure to unprotected heights or moving mechanical parts; can concentrate in the workplace for two (2) hours before requiring a break; can perform simple, routine tasks; can frequently interact with supervisors and coworkers; can occasionally interact with the

> general public; and can frequently respond appropriately to changes in a routine work setting."

(*Id.* 31.) The ALJ then concluded that Plaintiff is unable to perform any past relevant work. (*Id.* 35.) Then, at the fifth step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy" that Plaintiff can perform. (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569a).) The ALJ relied on the impartial vocational expert's testimony at the hearing to find that Plaintiff could perform the following jobs: marker; office helper; and photocopy-machine operator. (*Id.* 36.)

## II. **LEGAL STANDARD**

On appeal, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted). In other words, substantial evidence "may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks omitted).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence in the record.

5

*Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason," courts require an explanation from the ALJ of the reason why probative evidence has been rejected to determine whether the reasons for rejection were improper. *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981).

## III. DISCUSSION

On review of the ALJ's decision, (*see* AR 24-37), and the Administrative Record, (*see generally* AR), the Court finds good cause to affirm the Commissioner's decision. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706. Here, the ALJ provides extensive and thorough reasoning for his findings, and relies extensively on the medical evidence in the record. The Court determines that the ALJ's findings are supported by substantial evidence.

### A. Step Two

Step Two is a threshold analysis which determines whether the ALJ should continue to evaluate Plaintiff's claims for disability. "In effect, the inquiry at Step Two functions as a *de minimus* screening device to dismiss unfounded claims." *Bouchard v. Colvin*, No. 13-5283, 2014 WL 7011190, at *4 (D.N.J. Dec. 11, 2014) (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)). A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiffs] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. According to the Commissioner's regulations, "an

6

impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." *Newell*, 347 F.3d at 546 (citations omitted); 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137 (1987)).

Here, Plaintiff argues the ALJ's decision "eliminates half a dozen medically determinable impairments, rendering them 'not severe' while any fair or neutral understanding of the impairments and the severity standard would clearly indicate that each presents substantially more than a 'minimal effect' on the ability to perform basic work activities." (Pl. Br. at 7.) Specifically, Plaintiff argues that the ALJ improperly relied on Plaintiff's daily activities such as driving, riding a bike, and walking his dogs when categorizing Plaintiff's physical MDIs as not severe, including when the ALJ categorized Plaintiff's left shoulder degenerative arthritis as non-severe, as well as his irritable bowel syndrome, obesity, and sleep apnea. (*Id.*) Plaintiff argues that the ALJ should have seen that his obesity, when combined with physical obstructions such as bone spurs, in combination with hypertension, digestive impairments and sleep apnea, should lead to a severe impairment. (*Id.* at 8.) Plaintiff argues the error at step two is not harmless because it impacts Plaintiff's decisional RFC, which does not directly address several of the non-severe impairments. (*Id.*)

Defendant argues the ALJ "reasonably found some impairments not severe," and that substantial evidence supports the ALJ's position. (Def. Br. at 10.) Defendant further contends that "[a] diagnosis, without more, does not establish that Plaintiff's impairments were severe, and that Plaintiff did not meet his burden to show "these limitations significantly limited [his] ability to do basic work activities or impaired [his] capacity to cope with the mental demands of working."

7

(*Id.* at 11 (quoting *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140,145 (3d Cir. 2007)) (non precedential).)

The Court finds the ALJ did not err at Step Two. Although Plaintiff postulates that the MDIs categorized as non-severe *could* cause limitations, he offers no evidence from the record that Plaintiff's obesity in combination with his other non-severe physical impairments actually limited his ability to do work activities during the period in question. Further, Plaintiff suggests the ALJ picked his non-severe MDIs strategically so as to not limit Plaintiff to sedentary work, since Plaintiff turned fifty (50) years old over the course of his disability applications and a finding that Plaintiff was limited to sedentary work "would force the flipping of the outcome," i.e., would lead to a finding that Plaintiff was disabled. (Pl. Br. at 9.) However, as noted above, Plaintiff does not provide evidence of such limitations, cite to evidence in the record supporting his argument, or medical opinions that demonstrate error on the part of the ALJ. *Alejandra D. v. Comm'r of Soc. Sec.*, Civ. No. 22-175, 2023 WL 2609134, at *10 (D.N.J. Mar. 22, 2023) ("Plaintiff has not pointed to any evidence in the record indicating that obesity impacted [his] impairments such that the medical equivalency analysis would change or that [he] required additional RFC limitations due to [his] obesity."); *see also William J.-P. v. Kijakazi*, Civ. No. 20-18081, 2022 WL 909665, at *8 (Mar. 29, 2022) (finding "remand is not appropriate as it would not change the outcome of the case. Plaintiff has not presented any objective medical evidence to meet his burden of showing how his obesity actually impacted his work, as opposed to merely showing that he has obesity and struggles to work.").

Further, the ALJ thoroughly discussed his severity findings and cited extensive objective medical evidence underlying his determination of how to categorize each of Plaintiff's MDIs. (AR 27-29.) The ALJ relies on laboratory testing, treatment records, and testimony from the hearing

in developing his severity analysis. (*Id.* 28.) As noted above, Plaintiff does not point to specific error in this analysis, only that Plaintiff believes the outcome should have been different. It is not within this Court's power to reweigh evidence considered by the ALJ or "substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). This limitation applies "even if [the court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Moreover, even in cases with demonstrated error at Step Two, district courts typically do not remand decisions where the ALJ found at least one MDI and continued with the sequential disability analysis, as he did here. *See Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of [his] other impairments were non-severe, any error was harmless." (citing *Rutherford*, 399 F.3d at 553)); *see also Theresa S. v. Kijakazi*, Civ. No. 21-19997, 2022 WL 17959581, at *12-13 (D.N.J. Dec. 27, 2022) ("[E]ven if the ALJ's determination that [claimant's] diabetes is not severe was in error, it would be a harmless error because the ALJ did not decide against [claimant] at Step 2.").

**B.    Step Three**

At Step Three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. "[T]he medical criteria defining the listed impairments [are set] at a higher level

9

of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (quoting 20 C.F.R. § 416.925(a)).

Here, the ALJ concluded that Plaintiff does not meet or equal the criteria for any of the Commissioner's Listings. (AR 29.) Regarding Plaintiff's physical impairments, the ALJ considered: Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root); Listing 1.16 (lumbar spinal stenosis); and Listing 11.02 and SSR-19-4p in combination (whether Plaintiff's headache disorder meets or medically equals listing 11.02). (*Id.*) The ALJ found Plaintiff did not meet any of the criteria when his physical impairments were considered singly and in combination. (*Id.*) The ALJ also found that the severity of Plaintiff's mental impairments when considered singly and in combination did not meet the Commissioner's criteria. (*Id.*) The ALJ examined: Listing 12.02 (neurocognitive disorders); Listing 12.04 for depressive, bipolar, and related disorders; and 12.15 for trauma and stressor-related disorders. (AR 29–31.)

In making his decision, the ALJ relief on testimony from Plaintiff, medical treatment records, including from the Veteran's Administration ("VA"), and evaluations from both state and non-state medical consultants. (*Id.*) In particular, the ALJ noted that Plaintiff had received minimal mental health treatment following the alleged disability onset date, despite the VA's determination that Plaintiff was 100% disabled at least partially due to PTSD. (*Id.* 30) He also relied on the ALJ's prior decision in this case. (*Id.* 31.)

Plaintiff argues evidence in the record supports a finding that he meets Listings 12.02, 12.04, and 12.15, or that he otherwise equals a combination of those Listings given the ALJ's finding that he has four severe mental MDIs. (Pl.'s Br. at 9-24.) Plaintiff argues that he satisfies the "A" criteria of those Listings, and that the ALJ "cherry-pick[ed]" isolated observations rather

than relying on the objective medical evidence to find that Plaintiff did not have "marked" limitations and therefore that he did not meet the listing criteria due to not meeting the "B" criteria. (*Id.* at 12.) Additionally, Plaintiff contends that the VA's finding that Plaintiff was 100% disabled "due to PTSD for suffering a traumatic brain injury after a direct rocket hit on his convoy" should have weighed more on the analysis, and that the ALJ did not properly evaluate how Plaintiff's severe mental MDIs affected his ability to work. (*Id.* 15.)

To meet Listing 12.02, 12.04, or 12.15, a plaintiff must prove that he satisfies a combination of the respective "A" and "B" criteria or "A" and "C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The Third Circuit "does not require the ALJ to use particular language or adhere to a particular format in conducting [his] analysis" at step three. *Jones*, 364 F.3d at 505 (discussing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). Instead, the ALJ is required to issue a decision that, "read as a whole," contains a "sufficient development of the record and explanation of [the ALJ's] findings to permit meaningful review." *Id.*

An ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Id.* (citing *Burnett*, 220 F.3d at 120); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). It is well-settled that this "requires more than just a conclusory statement that a claimant does not meet the listings." *Burnett*, 220 F.3d at 119. The Third Circuit "has stated that it is the ALJ's 'responsibility . . . to identify the relevant listed impairment(s)' and 'develop the arguments both for and against granting benefits.'" *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149 (3d Cir. 2008) (quoting *Burnett*, 220 F.3d at 120 n.2). Here, the ALJ concluded that Plaintiff does not meet or equal the Listings because he does not meet the "B" or "C" criteria. (AR 29-31.) Specifically, the ALJ found that Plaintiff has mild and moderate, as opposed to

11

marked or extreme, limitations across the four functional "B" criteria,[5] and that under the "C" criteria Plaintiff's impairments do not result in marginal adjustment or a minimal capacity to adapt to changes in environment or to demands not already part of daily life. (*Id.*) After careful review, the Court finds that substantial evidence in the record, when "read as a whole," supports the ALJ's conclusions at step three. *Jones*, 364 F.3d at 505.

The ALJ's decision explicitly considers Plaintiff's testimony and treatment records of providers when determining that Plaintiff has only mild or moderate limitations across each functional "B" criterion, including Plaintiff's ability to concentrate, persist, or maintain pace. (AR 29-30 (citing Hearing Testimony, Exs. B6F, B7F.) Regarding the "C" criteria, the ALJ's decision found the record did not support a finding that "claimant received medical treatment, mental health therapy, psychosocial support, or that he lived in a highly structured setting that was ongoing and that diminished the symptoms and signs of his mental disorder" and therefore Plaintiff did not meet the "C" criteria. (*Id.* 30.) Plaintiff has not provided adequate support from the record or shown error in the ALJ's analysis that merits remand on Step Three.

The Court will therefore affirm the ALJ's decision at Step Three, as it is supported by substantial evidence. *Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007) (affirming where the ALJ compared evidence in the record to the Commissioner's Listings requirements and provided a thorough analysis showing he relied on substantial evidence in the decision.)

### C. The RFC Findings

An individual's RFC is an assessment of their maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. 20 C.F.R. § 404.1545(a); SSR 96-8p. The RFC assessment is an administrative finding and the ALJ alone

---

[5] A plaintiff needs to show marked limitations of two, or extreme limitation of one, of the four functional "B" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

is responsible for crafting a plaintiff's RFC. *See* 20 C.F.R. § 404.1527(d)(2). Generally, a court should defer to the presiding ALJ when substantial evidence supports their conclusion. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). As mentioned, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The ALJ's full RFC finding is discussed *supra*.

Plaintiff argues the decisional RFC "is not based on substantial evidence, arrives without a comprehensive rationale and is not reflective of the ALJ's own findings." (Pl. Br. at 24.) Specifically, Plaintiff argues that due to Plaintiff's age, the RFC is specifically calculated to support a finding that light work is appropriate, as "[a]n RFC for sedentary work would demand a finding of disability" due to vocational rulemaking, particularly "vocational rule 201.14." (*Id.* at 32.) He also complains the ALJ did not explicitly analyze Plaintiff's non-severe impairments in the RFC determination. (*Id.*) Plaintiff's argument effectively boils down to an allegation that the ALJ delivered an outcome-directed decision and did not truly start by relying on the evidence in the record and then coming to a conclusion, instead determining what the outcome would be and then supporting it with carefully selected citations. (*Id.* at 32-33.)

Defendant disagrees, and argues the ALJ considered all of the evidence, including Plaintiff's non-severe impairments, in creating an RFC based on substantial evidence. (Def. Br. at 14.) Further, Defendant argues "Plaintiff's assertion that a sedentary exertion level is warranted lacks any substantive discussion or citation to the record as to how any of the nonsevere physical impairments reduce Plaintiff to the standing, walking, lifting, or carrying of sedentary work, despite this being his burden." (*Id.* at 15.) Defendant argues "the ALJ's residual functional capacity assessment can be reasonable discerned" and Plaintiff does "not advance any overlooked evidence not considered by the ALJ" in his findings. (*Id.* at 17.)

After a comprehensive review of the record, the Court finds that substantial evidence supports the ALJ's determination of Plaintiff's RFC. An ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec.*, Civ. No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.").

The ALJ devoted significant space in his decision discussing the relevant medical evidence, medical opinions, and subjective testimony. (*Id.* 31-35.) The Court finds no error in the ALJ's ultimate finding that Plaintiff could engage in light work with exertional limitations because substantial evidence supports his decision. (AR 31). The record demonstrates that the ALJ considered all of the medical and non-medical evidence before him in determining Plaintiff's residual functional capacity. *See Cop*, 226 F. App'x at 208.

For all of these reasons and given the ALJ's thorough discussion of Plaintiff's impairments and reliance on medical evidence in the record, the Court finds no deficiency in the ALJ's RFC analysis. *See Wellington W. v. Kijakazi*, Civ. No. 22-05042, 2023 WL 5551030, at *6 (D.N.J. Aug. 29, 2023) ("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record ... and provided a clear presentation of her reasoning . . . .."); *Jose S. v. Kijakazi*, Civ. No. 19-19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) ("The ALJ's detailed examination of the objective medical

evidence . . . indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record.'").

## IV.   CONCLUSION

For the foregoing reasons, the Court will **AFFIRM** the ALJ's decision. An appropriate Order will follow.

Date: November 26, 2024

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE